Hillsborough
No. 7258

STATE OF NEW HAMPSHIRE

v.

CREDIT BUREAU OF NASHUA, INC., & *a.*

July 31, 1975

*Warren B. Rudman,* attorney general, *Richard V. Wiebusch,* assistant attorney general, and *W. John Funk,* attorney *(Mr. Wiebusch* orally), for the State.

*Hamblett, Kerrigan, LaTourette & Lopez (Mr. Joseph M. Kerrigan* orally) for the defendants.

KENISON, C.J. The question for decision by this appeal is whether a private credit bureau may transfer ownership or possession of credit files which it has compiled on consumers to "any person other than the subject of those files" without violating the provisions of RSA ch. 359-B (Supp. 1973) (Consumer Credit Reporting). *See* 15 U.S.C. § 1681 *et seq.* (Credit Reporting Agencies). *Loughlin,* J., reserved and transferred the State's exception to his determination that RSA ch. 359-B (Supp. 1973) does not prevent the transfer of the files.

The defendant Credit Bureau of Nashua, Inc., engages in the business of providing credit reports on consumers. Information collected by the bureau from various financial organizations, official records and credit investigations is maintained in its files. Condensations of the information in the form of consumer credit reports are sold by the defendant credit bureau to prospective grantors of credit as well as to other interested persons, subject to the restrictions of RSA ch. 359-B (Supp. 1973) and 15 U.S.C. § 1681 *et seq.* *See* Hearings on S. 823 Before the Subcomm. on Financial Institutions of the Senate Banking and Currency Comm., 91st Cong., 1st Sess., at 52-53 (May 1969) [hereinafter cited as Senate Credit Bureau Hearings of 1969]; Countryman, *The Diminishing Right of Privacy: The Personal Dossier and the Computer,* 49 Texas L. Rev. 837, 839-41 (1971); Note, *Protecting the Subjects of Credit Reports,* 80 Yale L.J. 1035, 1036-37 (1971).

In May 1975, the Credit Bureau of Nashua, Inc., mailed a letter to the subjects of its credit files proposing to sell the individual his own file prior to the bureau's contemplated transfer of the files to a "large computerized data bank, which may allow unlimited access by thousands of people." By a petition dated June 9, 1975, the State sought to enjoin the sale of the bureau's files to individual

consumers and the transfer of ownership or possession of the files to any other party. RSA 358-A:2 (Supp. 1973) (Regulation of Business Practices for Consumer Protection: Acts Unlawful); RSA 358-A:4 III (Supp. 1973) (Administration; Enforcement); RSA 359-B:4 (Supp. 1973) (Consumer Credit Reporting: Permissible Purposes of Reports); RSA 359-B:7 (Supp. 1973) (Compliance Procedures); RSA 359-B:21 (Supp. 1973) (Administrative Enforcement).

On June 10, the Superior Court *(Loughlin,* J.) issued a temporary restraining order directing that the defendants "are enjoined from either selling any consumer credit files to consumers or transferring ownership or possession of any consumer credit files to any other party", pending a hearing on the State's petition for a permanent injunction. As a result of a hearing on the State's petition held June 13, the superior court vacated the temporary restraining order insofar as it prevented the transfer of the bureau's files to any person other than the consumer, on the ground that RSA ch. 359-B (Supp. 1973) does not prohibit the transfer.

During the past twenty-three years the total consumer credit outstanding in the United States has increased more than 22-fold, giving rise to a burgeoning consumer credit reporting industry which has created a vast resource of personal information on this country's citizens. Consumer Credit in the United States, Report of the National Commission on Consumer Finance, at 5 (1972); *id.* at 9; Fed. Reserve Bull. A-54 (Jan. 1971); Senate Credit Bureau Hearings of 1969, *supra* at 1; *see* Note, *Credit Investigations and the Right to Privacy: Quest for a Remedy,* 57 Geo. L.J. 509 (1969). Computerized information storage and retrieval have increased the danger of harm to the consumer resulting from inaccurate and unwarranted disclosures of personal information. Spafford, *Consumer Credit: Giving Creditors Their Due,* 11 Trial 35 (1975); McNamara, *The Fair Credit Reporting Act: A Legislative Overview,* 22 J. Pub. L. 67, 87-88 (1973); Senate Credit Bureau Hearings of 1969, *supra* at 28-31.

Recognizing the need for regulation of the consumer reporting industry, Congress enacted the Fair Credit Reporting Act (15 U.S.C. § 1681 *et seq.),* effective April 24, 1971. *See* Proxmire, *Consumer Credit: Privacy the Collateral,* 11 Trial 34, 36 (1975); Note, *The Fair Credit Reporting Act,* 56 Minn. L. Rev. 819, 822 (1972); Denny, *Federal Fair Credit Reporting Act,* 88 Banking L.J. 579, 586-87 (1971). Several months later on August 29, 1971, New Hampshire adopted RSA ch. 359-B (Supp. 1973) (Consumer Credit Reporting) which was intended to be an almost verbatim enactment of the Federal

Fair Credit Reporting Act. N.H.S. Jour. 1242 (1971); Laws 1971, 430:1 (An Act Enacting the Fair Credit Reporting Act).

While acknowledging the economic need for credit reporting, both the Federal and the New Hampshire Acts purport to "require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . . ." RSA 359-B:2 II (Supp. 1973) (Findings and Purpose); 15 U.S.C. § 1681(b) (Congressional findings and statement of purpose); *see* RSA 359-B:2 I (a) (Supp. 1973); 15 U.S.C. § 1681 (a) (1). To accomplish these goals, the Acts restrict the dissemination of personal information (RSA 359-B:4 [Supp. 1973]; 15 U.S.C. § 1681b); require information to be accurate as well as current (RSA 359-B:5 [Supp. 1973], :7 II [Supp. 1973]; 15 U.S.C. §§ 1681c, 1681e(b)); and allow the consumer access to the information in his credit file (RSA 359-B:9 [Supp. 1973], :11 [Supp. 1973]; 15 U.S.C. §§ 1681g, 1681i); *see* Koon, *Translating the Fair Credit Reporting Act,* 48 Den. L.J. 51, 53 (1971); Note, 23 Me. L. Rev. 253, 257 (1971). *See also* Comment, *Commercial Credit Bureaus: The Right to Privacy and State Action,* 24 Am. U.L. Rev. 421, 439-41 (1975).

The effective scope of RSA ch. 359-B (Supp. 1973) and of the Federal Act is limited, however, to "consumer reports" furnished by a "consumer reporting agency". RSA 359-B:3 VI (Supp. 1973) defines a "consumer reporting agency" as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties . . . ." (15 U.S.C. § 1681a (f)). A "consumer report" is broadly defined as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (1) credit or insurance to be used primarily for personal, family, or household purposes, or (2) employment purposes, or (3) other purposes authorized under RSA 359-B:4 (15 U.S.C. § 1681b) . . . ." RSA 359-B:3 IV (Supp. 1973); 15 U.S.C. § 1681a (d); *see* Koon, *supra* at 53; Klas, *The Fair Credit Reporting Act-More*

*Federal Disclosure Requirements,* 43 Penn. B. Ass'n Q. 32, 33 (1971); *cf.* Ariz. Rev. Stat. § 44-1691.3 (Supp. 1974); Calif. Civ. Code § 1751 (e) (Deering 1972); Mass. Gen. Laws Ann. ch. 93 § 50 (1972); N.Y. Gen. Bus. Law § 371 (e) (McKinney Supp. 1974).

A consumer reporting agency may furnish a consumer report only in response to a court order, in accordance with the written instructions of the consumer to whom it relates, or to a person which the agency has reason to believe intends to use the information in connection with a credit, employment, insurance or business transaction involving the consumer. RSA 359-B:4 I (a) to (c) (Supp. 1973) (Permissible Purposes of Reports); 15 U.S.C. § 1681b (1) to (3).

Although the parties agree that the defendant Credit Bureau of Nashua, Inc., is a "consumer reporting agency" (RSA 359-B:3 VI [Supp. 1973]), they dispute whether the transfer of the bureau's files to another person is the furnishing of a "consumer report", triggering the restrictions of RSA 359-B:4 I (Supp. 1973). *See* 15 U.S.C. § 1681b. The State contends that since the transfer of consumer credit files to persons other than the consumer constitutes the furnishing of a "consumer report", the defendant credit bureau can make the transfer only with the written consent of the consumers concerned or by order of a court of competent jurisdiction. RSA 359-B:3 IV (Supp. 1973); RSA 359-B:4 I (a), (b) (Supp. 1973); *see* 15 U.S.C. § 1681a (d); 15 U.S.C. § 1681b (1), (2). The defendants argue that the transfer of ownership or possession of consumer credit files from one consumer reporting agency to another consumer reporting agency is not the furnishing of a "consumer report" which would require compliance with the provisions of RSA 359-B:4 I (Supp. 1973). *See* 15 U.S.C. § 168 1b.

Whether transferring the ownership or possession of a consumer credit file may be the furnishing of a consumer report is a question which has not yet been decided under either the state or the federal statute. Nor are there interpretative regulations to aid in finding an answer to the problem. *See* Hearings on S.2360 Before Subcomm. on Consumer Credit of the Senate Banking, Housing and Urban Affairs Comm., 93d Cong., 1st Sess., at 669-70 (Oct. 1973); Martinez, *A Guide to the Fair Credit Reporting Act,* 18 Prac. Law. (No. 8) 79, 90 (1972); Note, *The Fair Credit Credit Reporting Act,* 56 Minn. L. Rev. 819, 826 (1972); Koon, *Translating the Fair Credit Reporting Act,* 48 Den. L. J. 51, 54 (1971). The integrated statutory scheme of RSA ch. 359-B (Supp. 1973) and the broadly inclusive language of RSA 359-B:3 IV (Supp. 1973), however, mandate that a con-

sumer reporting agency cannot transfer the ownership or possession of its consumer credit files to "any person other than the subject" of the files without full compliance with the requirements of RSA 359-B:4 (Supp. 1973). *See* 15 U.S.C. § 1681a (d); 15 U.S.C. § 1681b.

While RSA 359-B:3 VII (Supp. 1973) defines a "file" as "all of the information on that consumer recorded, and retained by a consumer reporting agency regardless of how the information is stored", that definition does not preclude the possibility that under certain circumstances a file may be a consumer report. (15 U.S.C. § 1868a (g)). According to the express language of RSA 359-B:3 IV (Supp. 1973) a consumer report includes any written communication of any information by a consumer reporting agency bearing on a consumer's personal or financial life which may be used for establishing the consumer's eligibility for credit, insurance, employment or government benefits. RSA 359-B:4 I (c), (1) to (5) (Supp. 1973); 15 U.S.C. § 1681b (3), (A) to (E). As the basis from which consumer reports are made, consumer credit files contain the type of information which RSA 359-B:4 (Supp. 1973) is directed at controlling. No less than the making of consumer reports, and perhaps more so, the unrestricted transfer of consumer credit files may result in harm to individual privacy which RSA ch. 359-B (Supp. 1973) purports to avoid. Senate Credit Bureau Hearings of 1969, *supra* at 84-86.

To permit the transfer of consumer credit files to any person other than the subjects without compelling compliance with RSA 359-B:4 (Supp. 1973) would frustrate the main purposes of the Act to limit the dissemination of information in the files to those with a direct and immediate need for the information, and to insure its currency as well as its accuracy. RSA 359-B:7 (Supp. 1973) (Compliance Procedures), 15 U.S.C. § 1681e; RSA 359-B:5 (Supp. 1973) (Obsolete Information), 15 U.S.C. § 1681c; RSA 359-B:9 (Supp. 1973) (Disclosures to Consumers), 15 U.S.C. § 1681g; RSA 359-B:11 (Supp. 1973) (Procedure in Case of Disputed Accuracy), 15 U.S.C. § 1681i; *see* Feldman, *The Fair Credit Reporting Act-Provisions and Problems,* 61 Ill. B. J. 314, 318 (1973); [1969-1973 Transfer Binder] CCH Consumer Credit Guide para. 99, 493 (Excerpts from FTC Informal Staff Opinion Letter, 1971); Statements of General Policy or Interpretations Under the Fair Credit Reporting Act, 16 C.F.R. § 600.1 (c) (1973); 4 CCH Consumer Credit Guide para. 11, 314 (Compliance with the Fair Credit Reporting Act, 1971).

Those dangers do not arise, however, if the transfer of ownership or possession of consumer credit files is to another consumer reporting agency since the use of the information in the files by the recipient agency would be circumscribed by the protective provisions of the Federal Fair Credit Reporting Act. *See* 15 U.S.C. § 1681a (f); 15 U.S.C. 1681b.

The defendant Credit Bureau of Nashua, Inc., may transfer the ownership or possession of its consumer credit files to another consumer reporting agency as that term is defined in RSA 359-B:3 VI (Supp. 1973), but may not transfer its files to any other person without complying with the provisions of RSA 359-B:4 I (Supp. 1973).

*So ordered.*

GRIMES, J., and GRIFFITH, J., did not sit; the others concurred.